NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                                    :
CBD & SONS, LTD.,                                   :
                                                    :        Civil Action No. 3:18-cv-4276-BRM-DEA
                        Plaintiff,                  :
                                                    :
        v.                                          :
                                                    :
                                                    :                    **OPINION**
                                                    :
RICHARD SETTEDUCATI, SHORE               :
LENDING GROUP, LLC, GMH                  :
MORTGAGE SERVICES, LLC,                  :
CHARLES A. LIBERTI, RAYMOND             :
R. MILLER, SR., and BLUE RIBBON         :
APPRAISALS, LLC,                         :
                                                    :
                        Defendants.                 :
_____:

**MARTINOTTI, DISTRICT JUDGE**

        Before this Court is Defendants Blue Ribbon Appraisal, LLC ("Blue Ribbon"), Charles

A. Liberti ("Defendant Liberti"), and Raymond R. Miller, Sr.'s ("Defendant Miller")

(collectively, the "Blue Ribbon Defendants") Motion to Dismiss Plaintiff CBD & Sons, Ltd.'s

("Plaintiff" or "CBD") Complaint for lack of personal jurisdiction and improper venue (ECF No.

20), and Defendants GMH Mortgage Services, LLC ("GMH") and Shore Lending Group, LLC's

("Shore Lending") (collectively, the "GMH Defendants") Motion to Dismiss CBD's Complaint

for lack of subject matter jurisdiction and failure to state a claim (ECF No. 21). Plaintiff opposed

the Blue Ribbon Defendants' Motion to Dismiss (ECF No. 26) and the GMH Defendants'

Motion to Dismiss (ECF No. 27). Having reviewed the submissions filed in connection with the

motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure

78(b), for the reasons set forth below and for good cause shown, the Blue Ribbon Defendants' Motion to Dismiss (ECF No. 26) is **GRANTED** and the GMH Defendants' Motion to Dismiss (ECF No. 27) is **GRANTED IN PART** and **DENIED IN PART**.

## I. PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural History

On March 27, 2018, CBD filed a Complaint (the "Complaint") before this Court asserting fraud against Defendant Richard Setteducati ("Defendant Setteducati"), Shore Lending, and GMH (Count One), breach of fiduciary duty against all Defendants (Count Two), unjust enrichment against all Defendants (Count Three), breach of contract against all Defendants (Count Four), a violation of the New Jersey Consumer Fraud Act ("NJCFA") against all Defendants (Count Five), negligence against the Blue Ribbon Defendants (Count Six), and professional malpractice against the Blue Ribbon Defendants (Count Seven). (Complaint (ECF No. 1).)[1]

On June 4, 2018, the Blue Ribbon Defendants filed a Motion to Dismiss each cause of action asserted against them in the Complaint, arguing this Court lacks personal jurisdiction over them and venue is improper in New Jersey. (ECF No. 20.) Also on June 4, 2018, the GMH Defendants filed a Motion to Dismiss CBD's Complaint asserting a lack of subject matter jurisdiction and that the Complaint fails to state a cause of action upon which relief can be granted. (ECF No. 21.) On June 5, 2018, Defendant Setteducati filed an Answer to the Complaint. (ECF No. 22.) On June 6, 2018, CBD filed an Opposition to the Blue Ribbon

---

[1] In November 2017, prior to the filing of the Complaint before this Court, CBD filed an identical action against these Defendants in the United States District Court, Eastern District of New York. (ECF No. 21-8, Ex. 8.) Thereafter, Defendants moved to dismiss arguing, *inter alia*, that jurisdiction and venue were improper in the Eastern District of New York. (*Id.*) CBD subsequently dismissed its complaint in the Eastern District of New York without prejudice and re-filed this Complaint. (*Id.*)

Defendants' Motion to Dismiss (ECF No. 26) and to the GMH Defendants' Motion to Dismiss. (ECF No. 27).

## B. Factual Background

For the purposes of these Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "'document *integral to or explicitly relied upon* in the complaint.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

CBD is a domestic business corporation located in New York and organized under the laws of the State of New York. (ECF No. 1 ¶ 4.) CBD is solely owned by Chana Daskal ("Daskal"), its President and lone shareholder. (ECF No. 1 ¶ 17.) Defendant Setteducati is a resident of Manasquan, New Jersey. (ECF No. 1 ¶ 5.) Shore Lending is a New Jersey corporation headquartered in Manasquan, New Jersey, and GMH is a Delaware corporation also headquartered in Manasquan, New Jersey (ECF No. 1 ¶¶ 6, 7.) Defendant Setteducati worked as a broker for both Shore Lending and GMH. (ECF No. 1 ¶¶ 8, 40.) Blue Ribbon is a Connecticut corporation headquartered in West Hartford, Connecticut which has been serving "appraisal needs for nationwide lenders and investors since 1990." (ECF No. 1 ¶ 11; ECF No. 26 at 2.) Defendant Liberti is a resident of West Haven, Connecticut and Defendant Miller is a resident of Milford, Connecticut. (ECF No. 1 ¶¶ 9-10.) Both Defendants Liberti and Miller are professional, licensed appraisers and both are employees and agents of Blue Ribbon. (ECF No. 1 ¶¶ 12, 68.)

On or about August 10, 2001, Daskal was involved in a helicopter crash near Las Vegas, Nevada which killed her husband and four others and left her with severe injuries requiring

constant care. (ECF No. 1 ¶¶ 18-23.) Specifically, Daskal suffered grave disfigurement, a broken back, and amputation of both of her legs. (ECF No. 1 ¶ 22.) After the accident, Gary Escandon ("Escandon") was appointed Daskal's legal representative and given Power of Attorney. (ECF No. 1 ¶ 24.) In 2007, Escandon formed and incorporated CBD, appointing Daskal President and sole shareholder and himself as Vice President. (ECF No. 1 ¶¶ 24-27.) The purpose of CBD was to "assist Daskal in managing her money and affairs" in hopes to "invest in real estate ventures" to support Daskal and her two sons in the long-term. (ECF No. 1 ¶ 26.)

Escandon breached his fiduciary duty to Daskal and CBD through various schemes, including a fraudulent loan, perpetrated with Defendant Setteducati, an acquaintance of his. (ECF No. 1 ¶¶ 28, 33-35.) Defendant Setteducati, a mortgage broker, owed approximately $75,000 to Escandon on a pre-existing debt, and to settle that debt, the two formulated a plan to obtain money from CBD through a real estate deal that would allow Defendant Setteducati to reimburse Escandon. (ECF No. 1 ¶¶ 36-37, 40-41, 48; Bennett Affidavit (ECF No. 26-1 ¶¶ 10, 13).) At the time of the alleged scheme between Defendant Setteducati and Escandon, Defendant Setteducati was employed by Shore Lending and GMH. (ECF No. 1 ¶ 34.)

Escandon and Defendant Setteducati conspired to create a loan using property owned by Paul Edwards ("Edwards"), a Connecticut resident who had previously done business with Defendant Setteducati. (ECF No. 1 ¶¶ 39-43.) Defendant Setteducati knew Edwards owned property located at 9-11 Colony Street and 13-17 Colony Street in Meridien, Connecticut (the "Colony Street Properties") and also knew Edwards needed a loan and could use the Colony Street Properties as collateral. (ECF No. 1 ¶ 44.) In or about 2006, the City of Meridien had conveyed the Colony Street Properties to Edwards for nominal consideration "as part of its initiative to rehabilitate the area's business district." (ECF No. 1 ¶ 45.)

Defendant Setteducati engaged the Blue Ribbon Defendants to conduct an appraisal of the Colony Street Properties in preparation to extend a loan to Edwards on behalf of CBD (the "Edwards Loan"). (ECF No. 1 ¶¶ 68-70, 77-80; 2011 Blue Ribbon Appraisal (ECF No. 1-1, Ex. A); 2012 Blue Ribbon Appraisal (ECF No. 1-2, Ex. B).) Prior to the extension of the Edwards Loan, Blue Ribbon conducted two separate appraisals of the Colony Street Properties, one in 2011 and one in 2012.

Blue Ribbon's 2011 appraisal of the Colony Street Properties (the "2011 Appraisal") is dated May 28, 2011, addressed to Shore Lending, care of GMH, at 2517 Highway 35, Manasquan, New Jersey, and notes the appraisal is being conducted "to estimate market value for financing purposes." (ECF No. 1-1, Ex. A at 1-2.) The 2011 Appraisal determined the actual assessed value of the Colony Street Properties to be $644,180. (ECF No. 1-1, Ex. A at 1-2.) In arriving at this valuation, the 2011 Appraisal used the full value of the apparently occupied comparable properties ("comparables"), averaging out after adjustments to $32/square foot with no discount for the vacancies on the Colony Street Properties. (ECF No. 1-1, Ex. A at 28-30.) Ultimately, the 2011 Appraisal concluded the Colony Street Properties have an as-is fee simple market value of $780,000. (ECF No. 1-1, Ex. A at 3.)

On April 28, 2012, approximately eleven months after the 2011 Appraisal, Blue Ribbon completed a second appraisal of the Colony Street Properties (the "2012 Appraisal"). (ECF No. 1-2, Ex. B.) As with the 2011 Appraisal, the 2012 Appraisal is also addressed to Shore Lending and GMH at the same Manasquan address. (ECF No. 1-2, Ex. B at 1-3.) After making adjustments using different comparables, Blue Ribbon priced the Colony Street Properties at $56/square foot and concluded the Colony Street Properties have an as-is fee simple market value of $900,000. (ECF No. 1-2, Ex. B at 1-10, 24-30.) Both the 2011 Appraisal and the 2012

Appraisal were conducted by Defendants Liberti and Miller, working on behalf of Blue Ribbon. (ECF No. 1-1, Ex. A at 1-3; ECF No. 1-2, Ex. B at 1-3.)

On or about June 6, 2012, relying on the 2011 and 2012 Appraisals, Escandon and Defendant Setteducati extended the Edwards Loan in the amount of $750,000, which was secured and collateralized by a mortgage on the Colony Street Properties, had an annual interest rate of 15%, and was to mature in twelve months. (ECF No. 1 ¶¶ 58-62.)[2] Thereafter, Defendant Setteducati paid his commission on the Edwards Loan to Escandon to settle his pre-existing debt. (ECF No. 1 ¶ 61.)

Edwards defaulted on the loan "almost immediately." (ECF No. 1 ¶ 63.) CBD alleges the Blue Ribbon Defendants' appraisals of the Colony Street Properties were negligent at best and professional malpractice at worst. (ECF No. 1 ¶ 70.) CBD further alleges Defendant Setteducati "deliberately misrepresented the value of the Colony Street Properties to Escandon and CBD, knowing that the appraisals would be relied upon in the decision to make the loan to Edwards." (ECF No. 1 ¶ 72.)

On June 28, 2013, Blue Ribbon conducted a third appraisal of the Colony Street Properties, which had an "effective date" of July 28, 2014 (the "2014 Appraisal"). (ECF No. 1-3, Ex. C.) The 2014 Appraisal was comprised of two separate appraisals, one for 9-11 Colony Street and one for 13-17 Colony Street. (ECF No. 1-3, Ex. C at 1-35.) The 2014 Appraisal valued the 9-11 Colony Street property at $195,000 and valued the 13-17 Colony Street property at $133,000, for an aggregate total value of $328,000. (*Id.*) CBD alleges that, based on the 2014 Appraisal, the 2011 and 2012 Appraisals are clearly inflated as the Colony Street Properties

---

[2] The Edwards Loan consisted of two separate loans which were eventually consolidated into one. On June 17, 2011, a loan was extended to Edwards in the amount of $400,000. (ECF No. 1 ¶ 57.) On June 6, 2012, CBD added an additional $350,000 to the loan to increase the total loan amount to $750,000. (ECF No. 1 ¶ 58.)

"were never worth anywhere near the amount they were appraised for by the Blue Ribbon Defendants in 2011 [or] 2012." (ECF No. 1 ¶¶ 93-94.) CBD further claims if "true and accurate appraisals had been prepared for CBD by the Blue Ribbon Defendants, it never would have lent any money to Edwards, let alone $750,000." (ECF No. 1 ¶ 95.)

After Edwards defaulted on the loan, CBD took title to the Colony Street Properties, which were "in complete and total disrepair" and therefore virtually worthless as they could not be leased. (ECF No. 1 ¶ 98.) CBD is involved in "active litigation with [] Edwards," but is unlikely to recoup any damages from him as he is an insolvent debtor. (ECF No. 1 ¶ 97.)

In 2016, Daskal and CBD sued Escandon in New York Supreme Court, Kings County (Index Number 503763/2015) for breach of fiduciary duty and abuse of Power of Attorney stemming from the loan extended to Edwards. (ECF No. 1 ¶¶ 28-29.) On or about January 6, 2016, Escandon was found liable for breach of fiduciary duty and the matter was referred to a Special Referee for a damages determination. (ECF No. 1 ¶ 30.) On April 7, 2016, Judge Richard N. Allman, J.S.C., of the Supreme Court of New York, Kings County, entered a judgment in favor of Daskal and CBD against Escandon in the amount of $350,000 upon determining the initial loan, for $400,000, was extended following due diligence and thus did not constitute a breach of fiduciary duty. (April 7, 2016 Transcript (ECF No. 21-6 at 43-49).) CBD contends it has not received any payment on the judgment it has obtained. (ECF No. 27 at 11.)

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of*

*Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

## B. Federal Rule of Civil Procedure 9(b)

Fraud based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Pro. 9(b). For a fraud based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200-02 (3d Cir. 2007). The level of particularity required is sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story – that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citation omitted). The

heightened pleading standard set forth in Rule 9(b) applies to causes of action asserted pursuant to the New Jersey Consumer Fraud Act ("NJCFA") and common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to NJCFA and common law fraud claims).

### III. DECISION

#### A. Blue Ribbon Defendants' Motion to Dismiss

##### i. Personal Jurisdiction

The Blue Ribbon Defendants contend this Court lacks specific jurisdiction over Blue Ribbon, Defendant Liberti, and Defendant Miller. (ECF No. 20 at 3-12.) CBD counters that the Blue Ribbon Defendants "injected themselves into New Jersey by soliciting and providing appraisal services to the other Defendants" and through their dealings with CBD, which was "then operating exclusively in New Jersey." (ECF No. 26 at 7.) Accordingly, CBD urges this Court to determine it possesses specific personal jurisdiction over the Blue Ribbon Defendants. (ECF No. 26 at 8.)

Pursuant to Federal Rule of Civil Procedure 4(k), a federal district court may exercise jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long-arm statute permits the exercise of personal jurisdiction over non-resident defendants to the fullest extent as allowed under the Fourteenth Amendment of the United States Constitution. N.J. Ct. R. 4:4-4; *Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792, 796 (D.N.J. 1996).

Personal jurisdiction may be either general or specific. *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their

affiliation with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). Here, CBD readily admits this Court does not have general personal jurisdiction over the Blue Ribbon Defendants. (ECF No. 26 at 8.) Moreover, "[s]ince *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdictional theory.'" *Daimler AG*, 571 U.S. at 119 (quoting *Goodyear*, 564 U.S. at 925).

There is a three-prong test to determine whether a court possesses specific personal jurisdiction over a particular defendant. *Sandy Lane*, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted)). The first prong is a "threshold" inquiry. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the two prior conditions are satisfied, a court may exercise specific personal jurisdiction should it otherwise "comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

Relying on the Bennett Affidavit, CBD argues the Blue Ribbon Defendants purposefully directed their activities towards New Jersey by virtue of performing appraisals for Defendant Setteducati, a New Jersey broker, and Escandon, CBD's Vice President who was "operating virtually exclusively in New Jersey." (ECF No. 26 at 10.) Specifically, CBD asserts the Blue Ribbons Defendants used telephone, fax, email, and paper mail to communicate with CBD and the other Defendants in New Jersey (ECF No. 26 at 9; ECF No. 26-1 ¶¶ 14-16), and mailed the 2011 and 2012 Appraisals to Defendant Setteducati in New Jersey (ECF No. 26 at 10), thereby

evidencing purposeful availment. Moreover, CBD contends the Blue Ribbon Defendants availed themselves of New Jersey law by "solicit[ing] additional business in New Jersey from [CBD and the other Defendants]." (ECF No. 26 at 9.) None of these alleged contacts are sufficient for this Court to establish specific personal jurisdiction over the Blue Ribbon Defendants.

The Blue Ribbon Defendants did not purposefully direct its activities at New Jersey, and as such, the first prong of the specific personal jurisdiction inquiry is not fulfilled. "'[A] deliberate targeting of the forum'" is necessary to "meet our Circuit's requirement of purposeful availment." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (quoting *Sandy Lane*, 496 F.3d at 317) (rejecting a plaintiff's stream of commerce theory as sufficient to exercise specific jurisdiction over a product manufacturer targeting consumers nationwide). Additional decisions from within this Circuit make it abundantly clear that a defendant's contact with the forum state must be intentional and deliberate in order to confer personal jurisdiction upon such defendant. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877-85 (2011) (plurality opinion from the Supreme Court rejecting the stream of commerce theory to establish specific personal jurisdiction).

Moreover, in order for specific personal jurisdiction to be conferred, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475); *see also Helicopteros Nacionales*, 466 U.S. at 417 (holding "[the] unilateral activity of another party or third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). Here, the Complaint merely alleges the relationship between CBD and the Blue Ribbon Defendants arose via a "solicitation" from

Defendant Setteducati, who was based in New Jersey. (ECF No. 1 ¶¶ 68-69.) CBD alleges in order to entice it to loan money to Edwards, Defendant Setteducati "knew he needed something" to demonstrate an inflated value of the Colony Street Properties and therefore "enlisted the help of the Blue Ribbon Defendants." (*Id.*) Importantly, there is no allegation the Blue Ribbon Defendants solicited business from Defendant Setteducati or Escandon, nor from any other party based in New Jersey. Rather, the Blue Ribbon Defendants, all of whom are domiciled in Connecticut, performed appraisals of Connecticut properties that were ultimately prepared for, and the subject of a lawsuit from, a New York plaintiff.

Furthermore, the communications between the Blue Ribbon Defendants and Defendant Setteducati and Escandon concerning the various appraisals are insufficient to establish jurisdiction over the Blue Ribbon Defendants. The Third Circuit has held "informational communications in furtherance of [a] contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [a non-resident defendant]." *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) (citing *Stuart v. Spademan*, 772 F.3d 1185, 1993 (5th Cir. 1985)) (holding "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity [sufficient to confer jurisdiction]"). *Sunbelt Corp.* concerned a transfer under 28 U.S.C. § 1404(a) in which a Texas corporation sought to establish specific personal jurisdiction over a Pennsylvania corporation in the Southern District of Texas exclusively by virtue of the latter's contract with the Texas corporation and post-contract telephone and facsimile communications. *Sunbelt Corp.*, 5 F.3d at 31-32. As in *Sunbelt Corp.*, the Blue Ribbon Defendants merely contracted with Defendant Setteducati and Escandon for work performed outside of the forum, and such minimal contacts do not create specific personal jurisdiction over the defendants within

New Jersey. *Id.* at 32 (holding "[i]t is well established . . . that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident").

Pursuant to the holding in *Sunbelt Corp.* as well as subsequent authority from the Supreme Court, it is clear that a contract alone does not automatically establish minimum contacts so as to confer jurisdiction in the other party's forum. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1783 (2017) (holding "[t]he bare fact [defendant] contracted with a California distributor is not enough to establish personal jurisdiction in the State"); *see also Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (holding a "contract alone does not automatically establish sufficient minimum contacts in the other party's home forum"). Thus, the fact the Blue Ribbon Defendants negotiated with New Jersey-based entities to perform its appraisal services is not dispositive.

In support of its contention that contracting with Defendant Setteducati and Escandon, both of whom were based in New Jersey, was sufficient to establish personal jurisdiction in New Jersey, CBD cites *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996). *Vetrotex* does not support CBD's position. In *Vetrotex*, the Third Circuit noted that contracting with a resident of a forum state "does not alone justify the exercise of personal jurisdiction over a non-resident defendant." *Id.* (quoting *Mellon Bank (East) v. DiVeronica Bros., Inc.*, 983 F.2d 551, 557 (3d Cir. 1993)). *Vetrotex* noted that courts should also consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," *id.* (citing *Burger King*, 471 U.S. at 479), before ultimately affirming the District Court and determining personal jurisdiction did not exist. As in *Vetrotex*, the Blue Ribbon Defendants did not solicit the agreement, nor is there any

allegation that any of the Blue Ribbon Defendants visited New Jersey in formulating the contract at issue. *Id.* at 151-52. Moreover, the limited communications between the parties in *Vetrotex* and the parties here are practically identical, consisting of "some telephone calls and letters written to . . . [the forum state]." *Id.* at 152. Accordingly, *Vetrotex* provides additional support to the Blue Ribbon Defendants' position that it did not purposefully avail itself of New Jersey law.

CBD also extensively cites *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252 (N.J. 1989) in support of its contentions. Similarly, *Lebel* provides no support to CBD's position. Unlike here, the *Lebel* court noted:

> "[t]his is not a situation in which the plaintiff [or third party] unilaterally brought about the contacts . . . Rather, this defendant allegedly telephoned the buyer in New Jersey to iron out the details of the contract, mailed the contract to the buyer in New Jersey . . . and received payment from the plaintiff."

*Id.* at 1255-56 (citations omitted).

On the contrary, there is no allegation that the Blue Ribbon Defendants sought a New Jersey client nor that they sought to conduct business in New Jersey. Rather, the Complaint merely alleges the relationship between CBD and the Blue Ribbon Defendants arose via a "solicitation" from Defendant Setteducati. (ECF No. 1 ¶¶ 68-69.)

Any activity directed towards CBD cannot be said to be directed towards New Jersey as CBD is not a New Jersey corporation. "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). By its own admission, CBD is a business corporation organized under the State of New York and located therein. (ECF No. 1 ¶ 4.) Moreover, there is no allegation that CBD's principal place of business is any place other than New York. Accordingly, CBD is not a New Jersey corporation and any actions directed

towards it cannot necessarily be said to be sufficient to establish personal jurisdiction in New Jersey.

Finally, CBD argues it meets the minimal burden required to allow discovery on the issue of personal jurisdiction. (ECF No. 26 at 12-13.) "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction," courts should allow jurisdictional discovery "unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). If the plaintiff alleges "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,'" then the plaintiff should be permitted jurisdictional discovery. *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Here, CBD is not entitled to jurisdictional discovery as such discovery is not critical to the determination of whether this Court can exercise personal jurisdiction. *See W. Africa Trading & Shipping Co. v. London Int'l Group*, 968 F. Supp. 996, 1001 (D.N.J. 1997). CBD has not identified any jurisdictional discovery that would demonstrate the Blue Ribbon Defendant's purposeful contacts with New Jersey. Additionally, CBD's assertion of such contacts is based exclusively on the Blue Ribbon Defendants' contractual relationships with Defendant Setteducati and Escandon, which are clearly insufficient to confer personal jurisdiction.

Since CBD has failed to allege the Blue Ribbon Defendants have purposefully availed themselves of the forum, a "threshold inquiry," the three-prong test laid out in *Sandy Lane* is not satisfied. *Hanson*, 357 U.S. at 253. Additionally, CBD has failed to demonstrate that it is entitled to discovery on the issue of personal jurisdiction. As such, this Court does not have personal

jurisdiction over the Blue Ribbon Defendants, and accordingly, the Blue Ribbon Defendants' Motion to Dismiss for lack of personal jurisdiction is **GRANTED**.

### ii.    Venue

Because this Court has already determined that it lacks personal jurisdiction over the Blue Ribbon Defendants, it is not necessary to determine whether laying venue before this Court is proper. Nevertheless, this Court finds that venue, with respect to the Blue Ribbon Defendants, was improper in New Jersey.

Venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred. 18 U.S.C. § 1391(b)(2). Venue "does not require that a majority of the events took place in the District, nor that the challenged forum be the best venue." *On-Time Staffing, LLC v. Flexible Staffing Sols., Inc.*, No. 06-cv-3951, 2007 WL 1234978, at *6 (D.N.J. Apr. 25, 2017). Rather, the court need only "'preserve the element of fairness [by ensuring] that a defendant is not haled into a remote district having no real relationship to the dispute.'" *Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 556 (D.N.J. 2018) (quoting *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). Crucially, the Third Circuit has held that the "test for determining venue is . . . the location of those 'events or omissions giving rise to the claim.'" *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (quoting *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994).

For essentially the same reasons this Court lacks personal jurisdiction over the Blue Ribbon Defendants, venue is improper in New Jersey as well. The Blue Ribbon Defendants have not purposefully availed themselves of New Jersey law, but more importantly, all of the events giving rise to CBD's claims against the Blue Ribbon Defendants took place in Connecticut. There is no significant connection between the Blue Ribbon Defendants and New Jersey, and as

such, venue is improper in New Jersey. Accordingly, the Blue Ribbon Defendants' Motion to Dismiss for lack of venue is **GRANTED**.

## B. GMH Defendants' Motion to Dismiss

### i. Standing

Defendants GMH and Shore Lending (collectively the "GMH Defendants") assert the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because CBD lacks standing to sustain its claim, and that accordingly, this Court lacks subject matter jurisdiction. (ECF No. 21-1 at 11-14.) CBD counters that it possesses standing to maintain the suit as it has satisfied the low bar to defeat a Rule 12(b)(1) motion and has adequately alleged a compensable injury in fact. (ECF No. 27 at 7-9.)

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (citing *Petruska v. Gannon Univ.*, 462 F.3d 394, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows a court [to] weigh and consider evidence outside the pleadings." *Id.* (citation omitted). Thus, when a factual challenge is made, "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "the plaintiff will have the burden of proof that jurisdiction does in fact exist,"

and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348-49. "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* (citing *Mortensen*, 549 F.2d at 892) (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

Here, the GMH Defendants assert a factual challenge to CBD's standing to maintain its causes of action against them, as they assert CBD has already recovered all damages sustained under the Edwards Loan. (ECF No. 21-1 at 13.) First, the GMH Defendants argue that CBD has no remaining compensable injuries as it has "already recovered all damages sustained by the [Edwards Loan]," (ECF No. 21-6 at 43-49) and acknowledged that it took title of the Colony Street Properties. (ECF No. 1 ¶ 82). However, the GMH Defendants point to no admissions nor filings evidencing that CBD has been paid. Notably, CBD contends it only has "paper judgments" at this point and that the Colony Street Properties, to which it took title, have little

value as they are in total disrepair. (ECF No. 27 at 8-9; ECF No. 1 ¶ 98.) As such, there are significant factual issues precluding this Court from determining that CBD has failed to allege any compensable injuries.

Second, the GMH Defendants contend CBD cannot establish the injury they suffered is traceable to any conduct of the GMH Defendants. (ECF No. 21-1 at 13.) The GMH Defendants argue CBD "cannot establish that the GMH Defendants committed a fraud, breached a contract, breached any fiduciary duty to [CBD], or were unjustly enriched at [CBD]'s expense." (*Id.*) On the contrary, CBD has alleged that the GMH Defendants employed Defendant Setteducati, against whom CBD has presented facially valid causes of action, and involved in the fraudulent appraisal scheme. Accordingly, CBD's legal theory is not so insubstantial so as to determine that they lack standing, and as such, the GMH Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) is **DENIED.**

### ii. Entire Controversy Doctrine

The GMH Defendants contend the Complaint should be dismissed for failure to state a claim as CBD's claim is barred by the entire controversy doctrine. (ECF No. 21-1 at 14-16.) Specifically, the GMH Defendants assert CBD's failure to join its claim against them in the Escandon lawsuit precludes the assertion of such claim at this juncture. (*Id.*) CBD counters that the entire controversy doctrine does not function as a bar to bringing its claim against the GMH Defendants in the current proceeding because its failure to join the GMH Defendants was excusable as the GMH Defendants "could not be joined to the Escandon action." (ECF No. 27 at 10-14.)

New Jersey's entire controversy doctrine is "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in

one suit." *Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016). Specifically, the doctrine

> requires a party to bring in one action all affirmative claims that it might have against another party or be forever barred from bringing a subsequent action involving the same underlying facts. The central consideration is whether the claims arise from related facts or the same transaction or series of transactions.

*Opdycke v. Stout*, 233 F. App'x 125, 129 (3d Cir. 2007) (citations omitted).

"Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999). "The purposes of the doctrine are threefold: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." *Ditrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995). The Third Circuit has ruled that "[a] federal court hearing a federal cause of action [or an action in federal court on diversity grounds] is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738 (1994)." *Litgo N.J., Inc. v. Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369, 400 n.2 (3d Cir. 2013).

Notably, the New Jersey Supreme Court has also cautioned "that application of the entire controversy doctrine is 'best left to [a] case-by-case determination' and should not be applied when it would result in 'significant unfairness' to the parties." *Morris v. City of Trenton*, 2014 WL 4798871 at *8 (D.N.J. Sept. 26, 2014) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509, 513 (N.J. 1995)). "Equitable principles dictate that the doctrine should

only be applied when 'the party whose claim is being sought to be barred . . . had a fair and reasonable opportunity to have fully litigated that claim in the original action.'" *Id.* (quoting *Cafferata v. Peyser*, 597 A.2d 1101, 1106 (N.J. App. Div. 1991)). Although the entire controversy doctrine is an affirmative defense, it may be raised in a Rule 12(b)(6) motion if "apparent on the face of the complaint." *Rycoline Prods, Inc. v. C&W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Daskal and CBD sued Escandon in New York Supreme Court, Kings County in 2016 for breach of fiduciary duty and abuse of Power of Attorney stemming from the Edwards Loan. (ECF No. 1 ¶¶ 28-29.) CBD and Daskal did not join the GMH Defendants in the Escandon lawsuit. Where a litigant fails to join a necessary party in a prior proceeding, as here, the entire controversy may be invoked to bar claims against the necessary party where "such failure was (1) the result of the litigant's inexcusable conduct; and (2) results in substantial prejudice to the non-party." *Beale v. Rubin & Rothman, LLC*, 2009 WL 1916322, at *3 (D.N.J. June 29, 2009). "The concepts of inexcusable conduct and substantial prejudice are interrelated such that the existence of substantial prejudice will often serve to render the underlying conduct inexcusable." *Ctr. For Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150, 156 (D.N.J. 2004). Substantial prejudice "means that a person not joined in an earlier action will be seriously harmed in his or her ability to maintain an adequate defense in a subsequent action." *Id.* Examples of such harm include loss of witnesses, loss of evidence, and fading memories. *Id.* Delay alone does not serve to create substantial prejudice. *Id.*

Here, although the GMH Defendants were not joined to the Escandon lawsuit, such failure to join the GMH Defendants was not the result of inexcusable conduct, and it did not

result in substantial prejudice to the GMH Defendants. As CBD notes, there were legitimate jurisdictional issues involved in joining the GMH Defendants to the Escandon action, as the GMH Defendants allegedly argued New York was not the proper forum under jurisdictional or venue grounds. (ECF No. 27 at 13.) Moreover, the GMH Defendants have not alleged, nor demonstrated, any prejudice that may befall them should this action be permitted to proceed. Indeed, there is no claim of loss of witness or loss of evidence, and there is no substantial burden of haling New Jersey defendants into a New Jersey court. Accordingly, the GMH Defendants' Motion to Dismiss the Complaint pursuant to entire controversy doctrine is **DENIED**.

### iii.     Failure to State a Claim

The GMH Defendants assert CBD's fraud claims against them must be dismissed as there are no specific allegations of material misrepresentations made by the GMH Defendants, CBD's breach of contract claim against them must be dismissed as there was no written contract between the parties, CBD's unjust enrichment claim against them must be dismissed as there is no allegation the GMH Defendants received a benefit of any kind, and CBD's breach of fiduciary claim against them must be dismissed because they owed CBD no fiduciary duty. (ECF No. 21-1 at 16-22.) CBD counters that the GMH Defendants' Motion to Dismiss should be denied as Defendant Setteducati acted as the GMH Defendants' agent and therefore each of its claims alleges each necessary element pursuant to the doctrine of *respondeat superior*. (ECF No. 27 at 14-24.)

### a.   NJCFA and Common Law Fraud

The GMH Defendants contend CBD has failed to state a claim for either common law fraud (Count One) or a violation of the NJCFA (Count Five). (ECF No. 21-1 at 16.) Claims asserted pursuant to the NJCFA and common law fraud are subject to the heightened pleading

standard of Rule 9(b). *See Dewey*, 558 F. Supp. 2d at 524. To state a claim for common law fraud under New Jersey law, a plaintiff must allege "(1) [the defendant made] a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) [the defendant had] an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 926 A.2d 362, 368 (N.J. Super. Ct. App. Div. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

Meanwhile, the NJCFA prohibits "unconscionable commercial practice" involving the suppression of material information, stating in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice[.]

N.J. Stat. Ann. § 56:8-2.

Courts have interpreted this section to require the following three elements to state a cause of action under the NJCFA: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007)).

Here, although CBD did not assert fraud claims against the GMH Defendants, it did allege fraud claims against Defendant Setteducati with sufficient specificity so as to impute such

claims to the GMH Defendants pursuant to the doctrine of *respondeat superior.* "Under New Jersey law, an employer can be held liable to a third party under a theory of *respondeat superior* for the torts of an employee if the employee was acting within the scope of his or her employment." *Jones v. Ewing Twp. Bd. of Educ.*, 2010 WL 4669875, at *3 (D.N.J. Nov. 9, 2010) (citing *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003)). "In determining whether employee conduct is within the scope of employment, New Jersey courts consider the 'nature of the employment, the duties of the employee, [and] whether the [incident] occurred in the course of fulfilling some job-related function.'" *Jones*, 2010 WL 4669875, at *3 (quoting *Carter*, 815 A.2d at 465). Here, CBD has alleged, in its Complaint and via the Bennett affidavit, that Defendant Setteducati was employed by the GMH Defendants and acting in the course of his employment when brokering the Edwards Loan and subsequently paying the commission to Escandon. (ECF No. 1 ¶¶ 1, 2, 8, 16, 34-67; ECF No. 26-1 ¶¶ 11-13.) Indeed, when considering the nature of the employer-employee relationship alleged by CBD, it is evident that Defendant Setteducati was acting in the scope of his employment for the GMH Defendants when extending the Edwards Loan such that his conduct may be imputed to the GMH Defendants pursuant to the theory of *respondeat superior.*

When applying the doctrine of *respondeat superior*, it is clear CBD has adequately pled a claim for common law fraud. CBD asserted Defendant Setteducati made material misrepresentations regarding the value of the Colony Street Properties, Defendant Setteducati knew of the falsity of such misrepresentations, Defendant Setteducati intended for CBD to rely on his misrepresentations, CBD relied on the misrepresentations, and CBD suffered damages as a result. (ECF No. 1 ¶¶ 54-99.) As such, CBD has adequately pled common law fraud. *See Triffin*, 926 A.2d at 368 (citations omitted).

Additionally, CBD adequately pled all elements of the NJCFA as well. First, Defendant Setteducati's alleged conduct certainly constitutes an "unlawful practice" pursuant to N.J.S.A. § 56:8-2. "The [NJCFA] creates three categories of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 499 (D.N.J. 2009) (quoting *Vukovich v. Haifa*, 2007 WL 655597, at *9 (D.N.J. Feb. 27, 2007)). Affirmative acts require no showing of intent on behalf of the defendant. *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). "Thus, a defendant who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence or intent to deceive." *Vukovich*, 2007 WL 655597, at *9 (citation omitted). Here, CBD's Complaint alleges Defendant Setteducati knowingly pitched a bad loan investment to churn a fee, which satisfies the heightened pleading standard with respect to an "unlawful practice." (ECF No. 1 ¶¶ 1, 2, 8, 16, 34-67.) Second, CBD has adequately pled an "ascertainable loss." An "ascertainable loss" is one that is "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005). To satisfy this element, a "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland*, 964 A.2d at 749. Here, CBD adequately pled an ascertainable loss as they allege the loans have never been repaid and the Colony Street Properties are worth only a fraction of the appraisals. (ECF No. 1 ¶¶ 90-99.) Finally, CBD has also alleged a causal relationship between the alleged illegal conduct and its loss so as to adequately plead all elements of a NJCFA claim. Accordingly, the GMH Defendants' Motion to Dismiss CBD's NJCFA and common law fraud claims for failure to state a claim is **DENIED**.

### b. Breach of Contract

The GMH Defendants assert CBD's breach of contract claim against them must be

dismissed as there was no written contract between CBD and the GMH Defendants or between CBD and Defendant Setteducati. (ECF No. 21-1 at 18-19.) The GMH Defendants maintain that, pursuant to New Jersey's Statue of Frauds, N.J. Rev. Stat. § 25:1-5(f), loans of $100,000 must be in writing in order to seek damages pursuant to a breach of contract claim. (*Id.*) CBD counters the Complaint adequately pleads breach of contract, despite the fact that the contract was not written, as CBD performed upon it. (ECF No. 27 at 21-22.)

The New Jersey Statute of Frauds requires loans of $100,000 or more to be in writing in order for a party to recover thereon, stating in pertinent part:

> Promises or agreements not binding unless in writing. No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:
>
> . . .
>
> f. A contract, promise, undertaking or commitment to loan money or to grant, extend or renew credit, in an amount greater than $100,000, not primarily for personal, family or household purposes, made by a person engaged in the business of lending or arranging for the lending of money or extending credit. For the purposes of this subsection, a contract, promise, undertaking or commitment to loan money shall include agreements to lease personal property if the lease is primarily a method of financing the obtaining of the property[.]

N.J. Rev. Stat. § 25:1-5.

Here, CBD admits there is no written contract between the parties, but maintains it need not plead the existence of a written contract to sustain its breach of contract claim as it has already performed on the agreement. (ECF No. 27 at 22.) "'[I]t is well settled that an oral contract or agreement which might otherwise be barred by the Statute of Frauds is enforceable where there has been performance by one party and to do otherwise would work an inequity on

the party who has performed.'" *Ahlstrom v. Monteferriaro*, 2015 WL 5009769, at *4 (N.J. Super. App. Div. Aug. 18, 2015) (quoting *Graziano v. Grant*, 741 A.2d 156, 156 (N.J. Super. App. Div. 1999)). Here, CBD pled "Defendants [] Setteducati [and the GMH Defendants] had an agreement with [] CBD to properly and honestly broker the Edwards Loan relating to the Colony Street Properties in a professional and reliable manner." (ECF No. 1 ¶ 129.) Additionally, CBD adequately pled it performed on the contract and extended the Edwards Loan. (ECF No. 1 ¶¶ 81-99.) Whether such an agreement existed is a question of fact not appropriately disposed of at the motion to dismiss stage. As such, this matter presents the quintessential case where applying the Statute of Frauds to bar a suit would work an inequity on the performing party. Accordingly, the GMH Defendants' Motion to Dismiss CBD's breach of contract claim for failure to state a claim is **DENIED**.

### c. Unjust Enrichment

The GMH Defendants assert CBD's unjust enrichment claim against them must be dismissed because it is subsumed by CBD's other claims and there are no allegations that the GMH Defendants received compensation or a benefit of any kind. (ECF No. 21-1 at 19-20). CBD counters it has adequately pled all the elements of unjust enrichment as the Edwards Loan resulted in an "unwarranted benefit [to the GMH Defendants] and concomitant loss to [CBD]." (ECF No. 27 at 22-23.)

The New Jersey Supreme Court has recognized an independent, common law cause of action of unjust enrichment, explaining in pertinent part:

> To prove a claim for unjust enrichment, a party must demonstrate that the opposing party "received a benefit and that retention of that benefit without payment would be unjust." *Iladis v. Wal-Mart Store, Inc.*, 191 N.J. 88, 110, 922 A.2d 710 (2007) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994)). "That quasi-contract doctrine also 'requires that plaintiff

show that it expected renumeration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of renumeration enriched defendant beyond its contractual rights.'" [*Id.*] (quoting *VRG Corp.*, . . . 135 N.J. at 554, 641 A.2d 519).

*Thieme v. Aucoin-Thieme*, 151 A.2d 545, 557 (N.J. 2016).

Here, CBD has failed to assert the GMH Defendants received a benefit at its expense. On the contrary, the Complaint alleges the broker's commission stemming from the Edwards Loan was paid directly to Defendant Setteducati and subsequently "gift[ed]" to Escandon to satisfy a pre-existing debt between the two. (ECF No. 1 ¶¶ 47-50.) Moreover, any unjust enrichment claim asserted by CBD would be duplicative to its other claims against Defendant Setteducati and the GMH Defendants. Accordingly, GMH Defendants' Motion to Dismiss CBD's unjust enrichment claim for failure to state a claim is **GRANTED**.

### d. Breach of Fiduciary Duty

The GMH Defendants assert CBD's breach of fiduciary duty claim against them must be dismissed as, under the facts alleged, only Escandon – who has no connection to the GMH Defendants – owed a fiduciary duty to CBD. (ECF No. 21-1 at 21-22.) CBD counters that the GMH Defendants, through Defendant Setteducati, owed fiduciary obligations to CBD which were consequently breached. (ECF No. 27 at 23-24.)

"'Breach of a fiduciary obligation is a tort claim, and thus requires the showing of a duty, a breach, an injury, and causation.'" *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 311 (D.N.J. 2013) (quoting *In re ORFA Sec. Litig.*, 654 F. Supp. 1449, 1457 (D.N.J. 1987)). However, a tort remedy cannot "arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants*, 788 A.2d 268, 280 (N.J. 2002). CBD contends Defendant Setteducati owed it a fiduciary duty by virtue of his role as a

professional mortgage broker. (ECF No. 27 at 23-24.) However, CBD is unable to point to any

statute or New Jersey precedent creating a fiduciary duty owed by a mortgage broker to a client.[3]

The alleged contractual relationship between CBD and the GMH Defendants does not, in itself,

create a fiduciary duty on behalf of the GMH Defendants. CBD has failed to allege any facts

giving rise to a fiduciary duty owed by the GMH Defendants, and as such, the GMH Defendants'

Motion to Dismiss CBD's breach of fiduciary duty claim for failure to state a claim is

**GRANTED**.

### iv.    Statute of Limitations

Finally, the GMH Defendants assert CBD's claims must be dismissed because they are

time-barred by the applicable six-year statute of limitations on CBD's various causes of action.

(ECF No. 21-1 at 22-25.) CBD does not dispute that a six-year statute of limitations applies to

the claims brought against the GMH Defendants, but counters that its claims fall well within the

applicable statute of limitations in light of New Jersey's liberal "discovery rule." (ECF No. 27 at

24-27.)

The statute of limitations for claims brought pursuant to the NJCFA or common law

fraud is six years. *See* N.J. Stat. Ann. § 2A:14-1 (establishing a six-year statute of limitations for

claims brought pursuant to the NJCFA); *see also Fox v. Millman*, 45 A.3d 332, 339 (N.J. 2012)

(six-year statute of limitations applies to NJCFA claims); *see also Kaufman v. i-Stat Corp.*, 754

A.2d 1188, 1205 (N.J. 2000) (six-year statute of limitations applies to common-law fraud

---

[3] In support of its contention that mortgage brokers owe fiduciary duties, CBD points to two decisions from New Jersey state courts: *Aden v. Fortsh*, 776 A.2d 792 (N.J. 2001) and *Loyle, LLC v. Greater New York Mut. Ins. Co.*, 2017 WL 3861289 (N.J. Super. App. Div. Sept. 5, 2017). Both decisions create a fiduciary duty on behalf of insurance agents and do not concern mortgage brokers whatsoever.

claims).[4] However, the "'equitable principle of the discovery rule . . . delays the accrual of a cause of action' until the injured plaintiff discovers, or should have reasonably discovered, 'a basis for an actionable claim.'" *Fox*, 45 A.3d at 340 (quoting *Guichardo v. Rubinfeld*, 826 A.2d 700, 704 (N.J. 2000)).

The GMH Defendants assert CBD knew or should have known – through its agent, Escandon – of the alleged fraud perpetrated against it "at the time the first [appraisal] was completed and given an effective date of May 28, 2011." (ECF No. 21-1 at 23.) The Court is not persuaded by the GMH Defendants' argument. There is no reason that Escandon, or Defendant Setteducati, would inform CBD of a fraud they were allegedly perpetrating against it. The fact that Escandon owed CBD a fiduciary duty is immaterial, especially as Escandon was determined to have breached that duty. (ECF No. 1 ¶ 30; ECF No. 21-6 at 43-49.)[5] Rather, the earliest CBD could reasonably have discovered the fraud was upon the disclosure of the 2014 Appraisal – demonstrating the discrepancy between the pre-loan appraisals and the actual value of the Colony Street Properties – which had an effective date of July 28, 2014. (ECF No. 1-3, Ex. C.)

When applying the equitable principles of the discovery rule, CBD should be afforded six years to bring its claim from the date of the disclosure of the 2014 Appraisal, July 28, 2014.

---

[4] This Court notes that a six-year statute of limitations also applies to unjust enrichment, *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 391 (D.N.J. 2015), and breach of fiduciary duty claims. *Rapaport v. Robin S. Weingast & Assocs.*, 859 F. Supp. 2d 706, 715 (D.N.J. 2012). However, this Court need not provide an analysis of the statute of limitations claims with respect to the causes of action for unjust enrichment and breach of fiduciary duty as both causes of action were dismissed for failure to state a claim.

[5] Furthermore, this Court is also unpersuaded by the GMH Defendants' argument that, because CBD alleged Escandon negligently fulfilled his fiduciary duties by not investigating the true value of the Colony Street Properties, CBD must have known of the alleged fraud as early as 2011. (ECF No. 21-1 at 23-24.) Again, Escandon's role as a fiduciary to CBD does not serve to impute his knowledge of the alleged fraud perpetrated against CBD to CBD, as Escandon was involved in the fraud and thus unlikely to inform the victim of his fraud of his misdeeds.

Thus, CBD's claims would not be time-barred until July 28, 2020. As such, CBD brought the NJCFA and common law fraud claims well within the six-year statute of limitations. Accordingly, the GMH Defendants' Motion to Dismiss the Complaint pursuant as time-barred is **DENIED**.

### IV.   CONCLUSION

For the reasons set forth above, the Blue Ribbon Defendants' Motion to Dismiss (ECF No. 26) is **GRANTED** and the GMH Defendants' Motion to Dismiss (ECF No. 27) is **GRANTED IN PART** and **DENIED IN PART**.


**Date: January 31, 2019**               */s/ Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**